No. 24-2134

IN THE
# United States Court of Appeals for the Fourth Circuit

2311 RACING LLC D/B/A 23XI RACING AND FRONT
ROW MOTORSPORTS, INC.,
        *Plaintiffs-Appellants*,

*v.*

NATIONAL ASSOCIATION FOR STOCK CAR AUTO
RACING, LLC and JAMES FRANCE,
        *Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of North Carolina
No. 3:24-cv-886
Hon. Frank D. Whitney

**APPELLANTS' MOTION TO EXPEDITE
APPEAL AND SET BRIEFING DEADLINES**

Pursuant to 28 U.S.C. § 1657(a), Federal Rules of Appellate Procedure 27 and 31(a)(2), and this Court's Local Rule 12(c), plaintiffs-appellants ("Appellants") respectfully move for expedited hearing of this appeal from the district court's denial of Appellants' request for preliminary injunction. Order Denying Preliminary Injunction, 23*XI et. al. v. NASCAR, et. al.*, No. 3:24-cv-886 (W.D.N.C. Nov. 8, 2024), ECF No. 42 (the "Order"). Appellants filed a notice of appeal from the district court's injunction on November 12, 2024. This Court docketed the appeal on November 14, 2024. Under the earliest possible timeline for the standard briefing schedule, Appellants' opening brief would be due December 24, 2024, and briefing would be completed by February 13, 2025.

Appellants respectfully ask this Court to enter an expedited schedule to allow prompt consideration of Appellants' appeal from the denial of the preliminary injunction entered by the district court on November 8, 2024. Appellants' proposed schedule is tailored to their request that oral argument be held at the earliest possible date, but no later than December 13, 2024—which is the next available session according to this Court's oral argument

1

calendar. As explained below, if oral argument does not take place until this Court's subsequent session beginning on January 28, 2025, it will be too late for this Court to issue a decision that prevents irreparable harm to Appellants.

In support of this motion, Appellants state as follows:

1. An expedited appeal from the Order is appropriate under 28 U.S.C. § 1657(a), which instructs that "each court of the United States … shall expedite the consideration of … any action for temporary or preliminary injunctive relief." Accordingly, this Court and others consistently find that "under 28 U.S.C. § 1657(a) the granting or denying of a preliminary injunction is the basis for an expedited appeal." *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 n.8 (D.C. Cir. 2001); *see also Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 269 (4th Cir. 2002) (expediting appeal from a preliminary injunction decision); *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 337 (4th Cir. 2001) (same).

2. This antitrust case concerns Appellees' unlawful monopolization and restraints of trade in the input market for premier

stock car racing teams. Appellees have conspired and acted to ensure that their premier stock car racing series—the NASCAR Cup Series—is the only premier stock car racing series through anticompetitive acquisitions, exclusive contracts, and the imposition of non-compete and release terms on participating teams.

3. Appellants sought a preliminary injunction from the district court to: (1) allow Appellants, for the duration of this litigation, to compete in the NASCAR Cup Series under the terms of the 2025 Charter Agreements NASCAR previously offered to them (but which Appellees are now refusing to extend to Appellants); and (2) enjoin Appellees from enforcing the anticompetitive release terms of the 2025 Charter Agreements against Appellants, which Appellees argue would block Appellants' antitrust claims in this action.

4. The 2025 NASCAR Cup Series season commences with the first race on February 2, 2025. Without the injunction, Appellants will be forced to make a Hobson's choice: either risk releasing their antitrust rights in this action or be out of business from competing as premier stock car racing

3

teams. Appellants face this unlawful choice because Appellees have used exclusionary acts to monopolize the market and control the only top-tier stock car racing series in which Appellants can compete, and Appellees have made agreeing to the release a condition of competing in Cup Series races, whether under the Charter Agreements (which provide, among other things, guaranteed entry into every Cup Series race) or under "open" team agreements (which do not guarantee entry into any race).

5. Without the injunction, there is no option in which Appellants can continue their business without being forced to agree to Appellees' release and risking the loss of their antitrust claims in this action, as Appellees have indicated they plan on asserting the release as a defense in this case if Appellants compete under either the 2025 Charter Agreement terms or as "open" teams.

6. The district court denied Appellants' motion, and now Appellants face immediate irreparable harm if they do not receive this Court's expedited review of the district court's decision. That irreparable harm has already begun because Appellants cannot assure sponsors,

4

drivers, and fans that they will be able to compete as chartered teams in 2025—a condition that puts those critical relationships with sponsors, drivers, and fans at immediate risk.

7. Appellants' irreparable harm will be further exacerbated if they do not receive this Court's expedited review of the decision below before mid-January 2025, when, absent Charter Agreement rights, Appellants will have to decide whether to sign the "open" team agreement that also contains the anticompetitive release terms, or forego competing in the February 2, 2025, race that begins the Cup Series season.

8. One of the most important races of the year for Appellants to maintain their goodwill with sponsors, fans, and drivers is the Daytona 500, and that race is scheduled to take place on February 16, 2025.

9. Appellants seek this Court's expedited review of the decision below to avoid the irreparable harm described above. Appellants should not have to be forced to choose between risking the release of their antitrust claims in this action or not being able to compete at all in the monopolized input market for top-tier stock car racing teams.

10. Appellees began offering "Charter Agreements" to Cup Series teams in 2016. These Charter Agreements provided teams with guaranteed entry into all Cup Series races, along with a share of media and other revenues derived from Cup Series races. This guaranteed race access allows teams to attract sponsors and top drivers, both of which want the guaranteed exposure that comes with the team being able to enter every Cup Series race. Teams that do not sign the Charter Agreements can attempt to qualify for Cup Series races as "open" teams, but they are not guaranteed entry and do not receive the revenue shares provided under the Charter Agreement. Given this lack of guaranteed access that "open" teams can market to sponsors and drivers, teams without Charter Agreement rights have been uniformly unsuccessful and are not economically viable.

11. In September 2024, Appellees offered Appellants (and all other Cup Series teams with current Charter Agreements) a renewed 2025 Charter Agreement. That agreement includes a mandatory release of claims that Appellees assert precludes the very antitrust claims that

Appellants are pursuing in this action. To avoid being forced to choose between risking their antitrust rights and being forced out of the sport, Appellants sought a preliminary injunction from the district court that would allow them, for the duration of this litigation, to race in the Cup Series under the terms of the renewed 2025 Charter Agreements, but would prohibit Appellees from asserting that the release provision in the 2025 Charter Agreements bars Appellants' antitrust claims.

12. Because competing as "open" teams is not economically viable on any long-term basis and would immediately cause Appellants to experience irreparable injury in the form of the threatened loss of relationships and goodwill with drivers, sponsors, and fans, Appellants sought the proposed injunctive relief. Further, because Appellees would require Appellants to agree to the anticompetitive release even to compete as "open" teams, they would suffer that additional irreparable harm if they compete in that manner. Absent the injunction, there is no option available to Appellants in which they can continue to pursue their livelihood as top-

tier stock car racing teams without risking the release of their antitrust rights in this litigation.

13. On November 8, 2024, the district court declined to enter the requested preliminary injunction, concluding that although Appellants "allege they are on the brink of irreparable harm," that harm is not sufficiently immediate because the 2025 Cup Series will not begin until February 2025. Order at 5, 7. The first race is less than three months away, on February 2, 2025. In effect, the District Court ruled that the irreparable harm must first be experienced by Appellants before it is ripe for them to seek a preliminary injunction to prevent that harm from occurring in the first place.

14. As Appellants will demonstrate in their forthcoming opening brief, they face immediate irreparable harm already as they risk losing key sponsors and drivers, as well as goodwill and fans, without Charter Agreement rights for the 2025 season.

15. This case is thus eligible, and particularly well-suited, for expedited appeal. The parties should have no difficulty briefing the matter

quickly given that they completed briefing on Appellants' original motion for a preliminary injunction in just four weeks (which included an extension that Appellees requested due to the impact of Hurricane Milton), and that no discovery has been conducted in this matter.

16. Appellants propose the following schedule:

- November 22, 2024: Appellants' Opening Brief due;
- December 4, 2024: Appellees' Response Brief due;
- December 6, 2024: Appellants' Reply Brief due;

17. At the earliest possible opportunity after briefing is complete, but no later than December 13, 2024, the Court should schedule oral argument.

18. Appellants are prepared to present argument following expedited briefing. A transcript of the district court hearing has been prepared, and Appellants believe that the parties can present briefing of this appeal on the existing record.

19. Pursuant to this Court's Local Rule 27(a), counsel for Appellees have been notified of Appellants' intent to file this motion, and have informed Appellants that they oppose this motion. Counsel for Appellees

9

informed Appellants that they believe the Fourth Circuit's standard briefing schedule is reasonable and appropriate under the circumstances. Appellants strongly disagree. If the standard briefing schedule were followed here, briefing will not be completed until mid-February, and the Court's earliest oral argument date available following this schedule would be on March 18.  This means that the proceedings would not conclude until almost two months into the 2025 Cup Series season and well after the Daytona 500, meaning that Appellants will have already suffered significant, ongoing irreparable harm well before this Court has a chance to issue a decision.

     For the foregoing reasons, this Court should issue an expedited schedule for briefs for Appellants' appeal of the district court's denial of Appellants' request for preliminary injunction.

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: **/s/ Jeffrey L. Kessler**
Jeffrey L. Kessler
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

Danielle T. Williams
**WINSTON & STRAWN LLP**
300 South Tryon Street
16th Floor
Charlotte, NC 28202
Tel: (704) 350-7700
Fax: (704) 350-7800
dwilliams@winston.com

Jeanifer Parsigian
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com

*Counsel for Plaintiffs 2311 Racing LLC d/b/a 23XI Racing and Front Row Motorsports, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2024, I electronically filed the foregoing **MOTION TO EXPEDITE APPEAL AND SET BRIEFING DEADLINES** by using the appellate CM/ECF system.

I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ **Jeffrey L. Kessler**
JEFFREY L. KESSLER

# CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(g)(1), I hereby certify that the foregoing motion complies with the type-volume limitation in FRAP 27(d)(2)(A). According to Microsoft Word, the motion contains 1,713 words and has been prepared in a proportionally spaced typeface using Palatino Linotype in 14-point size.

<u>**/s/ Jeffrey L. Kessler**</u>　　　<br>
JEFFREY L. KESSLER