# No. 24-2134

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

2311 RACING LLC, d/b/a 23XI RACING,
and FRONT ROW MOTORSPORTS, INC.,

*Plaintiffs-Appellants*,

v.

NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC,
and JAMES FRANCE,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of North Carolina
No. 3:24-cv-0886-FDW-SCR

## DEFENDANTS-APPELLEES' OPPOSITION TO PLAINTIFFS-APPELLANTS' MOTION TO EXPEDITE APPEAL

Christopher S. Yates
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
chris.yates@lw.com

Tricia Wilson Magee
SHUMAKER, LOOP & KENDRICK, LLP
101 S. Tryon Street, Suite 2200
Charlotte, NC 28280
(704) 945-2961
tmagee@shumaker.com

Gregory G. Garre
Lawrence E. Buterman
Anna M. Rathbun
Christopher J. Brown
Christina R. Gay
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2207
gregory.garre@lw.com

*Counsel for Defendants-Appellees*

November 18, 2024

## INTRODUCTION

Plaintiffs' emergency motion to expedite proposes significant burdens on both Defendants and the Court without any valid justification. There is no urgency to this appeal, and certainly no urgency that would justify Plaintiffs' extraordinary request to require NASCAR to file its opening brief within a mere 12 days, over a period that includes the Thanksgiving holiday, when many counsel for NASCAR are traveling to be with their families. Moreover, Plaintiffs' proposed schedule is highly unfair to this Court: it would give the Court only one week with that briefing before oral argument. There is no need for this impractical schedule.

Indeed, Plaintiffs' primary claim of irreparable harm—that they might lose sponsors, drivers, and fans if they compete as "open" teams during NASCAR's 2025 Cup Series season—is both unsubstantiated and baseless, as the District Court explicitly found. Plaintiffs' arguments for expedition to this Court simply repeat the fact-bound arguments that the District Court carefully considered and rejected after a hearing. Moreover, Plaintiffs' own motion underscores, no less than seven times, that any potential harm of losing sponsors, drivers, and fans is merely a "risk" that is still speculative, contingent on a series of events, and not remotely imminent. Mot. 3-5, 7, 8. A "risk" of harm that might happen one or two years in the future—or never—does not justify the extreme expedition Plaintiffs are requesting here.

1

Plaintiffs' only conceivable explanation for needing a decision by "mid-January" is their claim (at 5) that they will "have to decide whether to sign the 'open' team agreement that also contains [a release of claims provision]" at that point. That argument was always unfounded. But now it rests on an entirely false premise. NASCAR provided teams with the 2025 open team agreement last week, and it does *not* include any release of claims provision. Plaintiffs' counsel has since confirmed to the media that Plaintiffs will compete as open teams in 2025 regardless of what happens in this litigation. This case simply does not present any circumstances remotely warranting the kind of extreme expedition Plaintiffs propose.

If this Court nevertheless concludes some expedition is appropriate, NASCAR respectfully requests that it direct the parties to brief the case on the alternative schedule NASCAR proposes below. That schedule will allow for the case to be argued during this Court's January or March sittings, while providing adequate time for thorough briefing that is most likely to assist this Court in the resolution of this appeal and time for this Court to prepare for oral argument.

The motion should be denied or, in the alternative, this Court should adopt a more reasonable expedited schedule, as outlined below.

## BACKGROUND

1. This case concerns NASCAR's "Charter" system, which guarantees Charter teams certain payments and positions in races. In 2016, NASCAR awarded

2

36 Charters to 19 racing teams for free. These Charters, governed by the 2016 Charter Agreement ("2016 Charter"), were the product of extensive negotiations between NASCAR and teams covering virtually every aspect of the sport.

To create a compelling product for fans, broadcasters, and sponsors, the 2016 Charter includes mutual promises: NASCAR limited the number of Charters available and guaranteed Charter members positions at each race and certain revenue payments, while Charter teams agreed not to race in certain other competitive forms of motorsports. That restriction on teams (the "Protection of Goodwill" provision) avoids potential confusion and dilution of the racing product. Teams without Charters can still compete as "open teams," as all teams did before 2016, and are not subject to the "Protection of Goodwill" restriction. The 2016 Charter also contained reciprocal releases of claims: NASCAR agreed to release claims against the teams related to their joint negotiations, with certain exceptions, while teams also released claims against NASCAR. The 2016 Charter expires on December 31, 2024, but provided each team with the exclusive right to negotiate a renewal with NASCAR from January to March 2023.

2. In June 2022—well ahead of the timeline set by the 2016 Charter—NASCAR and teams began negotiating the terms of the 2025 Charter.

NASCAR made significant concessions throughout the negotiations, including substantially increasing Charter teams' share of NASCAR's media

revenue and increasing minimum payments received by each team racing. NASCAR also offered a longer Charter term that aligns with NASCAR's new broadcast agreements: seven years, with a possible extension. Notably, throughout these negotiations, no team—including Plaintiffs—ever voiced any concerns to NASCAR about the release of claims provision.

With the 2016 Charter nearing its end, NASCAR needed to finalize the 2025 Charter to plan the upcoming racing season. Among other things, NASCAR needed to establish purse amounts, payout schedules, car counts, and ownership structures. So, following more than two years of negotiations, NASCAR circulated the proposed 2025 Charter for the teams' consideration on August 30, 2024, asking them to sign one week later, by September 6, 2024. Thirteen teams (representing 32 of the 36 Charters) signed the 2025 Charter before that deadline.

Plaintiffs were the only two teams that chose not to sign—even after being given an additional two weeks. When both Plaintiffs rejected their offers by not signing by their extended deadlines, NASCAR began working to fulfill its contractual obligations to teams under the 2025 Charter, including re-allocating purse money for the 2025 season based on 32 Charters instead of 36.

3. Plaintiffs subsequently filed this lawsuit, alleging that NASCAR had "used [its] monopsony power to impose manifestly anticompetitive terms" on teams in the 2016 and 2025 Charters. Compl. 33, Dkt. No. 1. They also sought a mandatory

4

preliminary injunction, asking the District Court to alter the status quo by forcing NASCAR to enter into a seven to fourteen year contractual relationship, but without the release of claims provision—notwithstanding the fact that NASCAR's best and final Charter offer had expired weeks earlier and included a release provision. Mot. Prelim. Inj., Dkt. No. 20. At oral argument on their motion, Plaintiffs' counsel conceded that Plaintiffs had repeatedly agreed to this exact same release provision, including as recently as six months ago, and never once objected to it during two years of 2025 Charter negotiations before filing their lawsuit. Plaintiffs' counsel also clarified during oral argument that Plaintiffs seek to challenge as anticompetitive only two provisions from the 2025 Charter—"[p]eriod," as counsel put it: the release of claims and "Protection of Goodwill" provisions. Tr. for Mot. for Prelim. Inj., Dkt. 41 at 49:3-6 ("We challenge the provisions, specific provisions that go to the release, the provision that says there are covenants not to compete. Period.").

On November 8, 2024, the District Court, after careful consideration of the briefing and numerous competing declarations, denied Plaintiffs' motion for a preliminary injunction. Order, Dkt. No. 42 ("PI Order"). The Court concluded that Plaintiffs had not sufficiently demonstrated "present, immediate, urgent irreparable harm" to warrant the extraordinary remedy of a preliminary injunction, but rather only "speculative, possible harm." *Id.* at 5. The Court emphasized that Plaintiffs

5

"could sign open contracts today and continue racing in 2025" even without Charters. *Id.* at 6. And it underscored that Plaintiffs had never "alleged that their business[es] *cannot* survive" without Charters, only that "their businesses *may not* survive." *Id.* The Court dismissed Plaintiffs' alleged goodwill losses from competing as open teams as "contingent on a host of events occurring, including speculation about how third parties may or may not act." *Id.* However, the Court made clear that Plaintiffs could file a "renewed motion" if "circumstances change," denying their motion without prejudice. *Id.* at 7.

## ARGUMENT

The Court should deny Plaintiffs' request to expedite this appeal on the entirely impractical and unnecessary schedule they have proposed. Expedited appeals by their nature place burdens on both the parties and Court and interfere with the Courts' disposition of other important matters. They are thus reserved only for cases in which the potential harm to a party during the pendency of the appeal is irreparable. Plaintiffs' stated harms, to the extent they exist at all, fall well short of the mark—as the District Court explicitly held below. If the Court believes that some expedition is warranted, the Court should adopt the alternative schedule NASCAR has proposed below. That schedule achieves expedition, while allowing the time necessary for the most effective briefing and oral argument.

1. Plaintiffs argue that expedition is warranted principally by recapitulating the exact same fact-bound arguments the District Court carefully considered and rejected in denying their request for a mandatory preliminary injunction. These arguments are wrong, unsupported by the evidence, and provide no basis for Plaintiffs' request that this case receive expedited treatment.

Plaintiffs primarily claim (at 4-5, 8) that they "face immediate irreparable harm" due to the "risk [of] losing key sponsors and drivers, as well as goodwill and fans, without Charter agreement rights for the 2025 season." However, just as "establishing a mere *risk* of irreparable harm is not enough" to warrant a preliminary injunction, the mere risk of harm does not justify extreme expedition. *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 530 (4th Cir. 2003); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy."). Plaintiffs entirely fail to specify when this purported "risk" might materialize, such that their highly expedited schedule could possibly be warranted. And they nowhere explain why the vague "risk" of losing sponsors or drivers—that might occur in one years' time, two years' time, or perhaps never—demands that briefing be completed in less than *one month*'s time, with a swift decision from this Court to follow.

The District Court's reasoning in denying Plaintiffs' request for a preliminary injunction for lack of irreparable harm demonstrates why this motion should be denied too. As the District Court explained, Plaintiffs' allegations and submitted evidence show only "a *potential* loss of goodwill, contingent on a host of events occurring, including speculation about how third parties may or may not act." PI Order 6 (emphasis added). For example, Plaintiffs' evidence establishes only a "speculative" possibility that they might lose sponsors or drivers, not any "'present prospect.'" *Id.* at 5-6 (citation omitted). Faced with NASCAR's evidence that Plaintiffs' teams are highly likely to qualify for all races, the District Court held that it is not possible to "say with confidence that [Plaintiffs' alleged] harm is more likely than not to occur *at all*"—let alone likely to occur in the first few weeks of the 2025 season. *Id.* at 7 (citation omitted). Plaintiffs' motion completely overlooks these conclusions in the District Court's opinion. But these findings underscore that this is not an extraordinary case warranting extraordinary expedition.

Nor is it correct for Plaintiffs to claim (at 5) that they need a decision by mid-January 2025 "when, absent Charter Agreement rights, [Plaintiffs] will have to decide whether to sign the 'open' team agreement that also contains the [release of claims provision]." As NASCAR recently informed Plaintiffs, the 2025 open team agreement does not include any release of claims provision. So Plaintiffs do not face the choice of "risking" releasing anything by competing as open teams next season—

8

a course of action they have already repeatedly and publicly committed to taking regardless of what happens in this litigation. *See* Opp. to Mot. Prelim. Inj., Dkt. No. 30-1 at 4-5, 74-76 (Plaintiffs stating they are "fully committed to competing in next year's Cup Series" "even if we have to do so on an 'open' basis"); K. Crandall, *23XI Racing, Front Row Motorsports to run as open teams in 2025*, RACER, https://racer.com/2024/11/16/23xi-racing-front-row-motorsports-to-run-as-open-teams-in-25/ (Nov. 16, 2024) (Plaintiffs' counsel confirming *after Plaintiffs filed their motion to expedite* that Plaintiffs will "race as open teams in 2025"). Plaintiffs thus have no valid reason to propose such extremely rushed briefing and argument.

On top of all that, Plaintiffs' purported injuries are self-inflicted, negating any potential "good cause" they might otherwise have for expedition. As the District Court found, Plaintiffs are sophisticated entities that had the opportunity to sign Charters but chose not to due to their inability to "negotiate a contract" with all their preferred terms. PI Order 6-7. But failing to secure all of a party's preferred contractual terms in a commercial negotiation does not amount to irreparable harm, nor does it warrant expedited court proceedings. If every failed negotiation justified expedition, this Court's docket would be burdened unnecessarily.

2. Compelling NASCAR to file its brief on December 4—just 12 days after receiving Plaintiffs' brief, and shortly after the Thanksgiving holiday—would be highly prejudicial. The standard time to file a response brief is 30 days from the

filing of the opening brief. Fed. R. App. P. 31(a)(1). Even in a direct criminal appeal in which liberty is at stake, the appellee is entitled to at least 21 days. Local R. 31(a). Plaintiffs do not even attempt to give any particularized reason why NASCAR's briefing time should be shortened *at all*; they certainly do not justify cutting it by more than 50%—over a holiday period, no less. NASCAR should be afforded the necessary time to appropriately address Plaintiffs' arguments, which—because of the press of time—may be less focused. *See Am. Airlines, Inc. v. Civil Aeronautics Bd.*, 445 F.2d 891, 895 n.2 (2d Cir. 1971) (Friendly, J.) ("In many such cases, … the briefs on ... expedited appeals are inadequate."). And there is simply no reason to impose this unnecessary briefing burden on NASCAR's lawyers, NASCAR's outside counsel, and all of their families, over the Thanksgiving holiday.

The way to shorten the briefing period without prejudicing NASCAR is straightforward: Plaintiffs may file their own brief early without shortening NASCAR's time to respond. NASCAR thus has no objection to setting a briefing schedule that has Plaintiffs' brief and the joint appendix due November 22, as they have requested, and NASCAR's brief due thirty days later, as the rules would ordinarily provide. Plaintiffs would then be free to file their reply brief whenever they are ready. Nor does NASCAR object to scheduling oral argument for the first available scheduled sitting after briefing is completed, at this Court's convenience. But NASCAR strenuously objects to having only 12 days to respond to Plaintiffs'

opening brief—and for those 12 days to be over a holiday weekend, and when NASCAR's appellate counsel already has many other obligations.

3. Should the Court conclude that some expedition is warranted, NASCAR respectfully requests that it direct the parties to brief the case on the alternative schedule NASCAR proposes below. The burdens imposed by Plaintiffs' highly expedited schedule are unusually severe on both the parties *and* the Court. NASCAR's alternative proposal, by contrast, would still allow for argument during this Court's January or March sittings, while providing more time for thorough and effective briefing by both parties and the Court's preparation for oral argument.

NASCAR therefore respectfully requests that this Court enter the below schedule should the Court decide to expedite this appeal:

- Appellants' opening brief: November 25, 2024
- Appellees' response brief: December 23, 2024
- Appellants' reply brief: December 30, 2024
- Oral argument: At the Court's convenience on or after January 26, 2025

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to expedite.

Dated: November 18, 2024

Christopher S. Yates
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
chris.yates@lw.com

Tricia Wilson Magee
SHUMAKER, LOOP & KENDRICK, LLP
101 S. Tryon Street, Suite 2200
Charlotte, NC 28280
(704) 945-2961
tmagee@shumaker.com

Respectfully submitted,

*s/ Gregory G. Garre*
Gregory G. Garre
Lawrence E. Buterman
Anna M. Rathbun
Christopher J. Brown
Christina R. Gay
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2207
gregory.garre@lw.com

*Counsel for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

This response to a motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2), because it contains 2,545 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f).

This response to a motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

Dated: November 18, 2024

*s/ Gregory G. Garre*
Gregory G. Garre
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2207

*Counsel for Defendants-Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2024, the foregoing was electronically filed with the Court via the appellate CM/ECF system, and that copies were served on counsel of record by operation of the CM/ECF system on the same date.

*s/ Gregory G. Garre*
Gregory G. Garre
